UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VUE YANG,<br><br>           Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | No. 2:18-cv-00443-KJN<br><br>ORDER |

       Plaintiff Vue Yang seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record.  (See ECF No. 18.)  The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment.  (ECF No. 19.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 22.)

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 7, 9.)

1

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on xx/xx/1965; is able to communicate in English; and previously worked as a blind assembler.[2] (Administrative Transcript ("AT") 60-61, 79, 236.) On On February 11, 2014, plaintiff applied for DIB and SSI, alleging that his disability began on April 16, 2012. (AT 236-52.) Plaintiff claimed that he was disabled due to sleeping issues, depression, anxiety, stress, posttraumatic stress disorder ("PTSD"), mental disorder, spurs in both feet, and high blood pressure. (AT 94.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on October 18, 2016. (AT 57-93.) The ALJ subsequently issued a decision dated January 6, 2017, determining that plaintiff had not been under a disability as defined in the Act, from April 16, 2012, through the date of the ALJ's decision. (AT 14-30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 29, 2017. (AT 1-4.) Plaintiff subsequently filed this action on February 27, 2018, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly weighed the medical opinion evidence; (2) whether the ALJ improperly discounted plaintiff's credibility; (3) whether the ALJ's residual functionary capacity ("RFC") determination was without substantial evidentiary support; and (4) whether the ALJ erred at step five.[3]

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

2

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[4] Preliminarily, the ALJ determined that plaintiff met the

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the

3

insured status requirements of the Act through December 31, 2017. (AT 16.) At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since April 16, 2012, the alleged onset date. (Id.) At step two, the ALJ found that plaintiff has the following severe impairments: bilateral calcaneal spurs, depression, anxiety, and PTSD. (Id.) However, at step three the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 17.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that plaintiff:

> can stand for two hours in an eight-hour workday. He can walk for two hours in an eight-hour workday. He can stand and/or walk cumulatively for four hours in an eight-hour workday. He can sit without limitation with normal breaks. He cannot climb ramps, stairs, ladders, ropes, or scaffolds. He must avoid work around hazardous machinery. The claimant can perform simple, repetitive tasks. He can maintain regular attendance pertaining to simple, repetitive tasks. He can perform work without special supervision. He can frequently interact with supervisors, coworkers, and the public. He can perform low stress, noncompetitive work not requiring production quotas or pacing.

(AT 19.)

At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. (AT 28.) Yet, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there are jobs that exist in significant numbers in the national economy that plaintiff could perform. (AT 29) Thus, the ALJ concluded

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

that plaintiff has not been under a disability, as defined in the Act, from April 16, 2012, through January 6, 2017. (AT 30.)

   B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

     1. *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

5

examining professional. Lester, 81 F.3d at 831.

Here, plaintiff argues that the ALJ failed to give appropriate weight to the opinions of Manuel Hernandez, M.D., Ian Johnson, M.D., and therapist Kao Vang, M.S.W., A.S.W.. (See ECF No. 18 at 12-15.)

i. **Manuel Hernandez, M.D.**

On June 6, 2014, plaintiff underwent a consultative examination with Dr. Hernandez as part of his applications for DIB and SSI. (AT 449-52.) In his decision, the ALJ accurately summarized Dr. Hernandez' findings and opinion:

> On exam, Dr. Hernandez noted the claimant walked favoring his right foot avoiding putting weight on the right heel. His blood pressure was elevated. He had tenderness to palpation with deep palpation to his right heel. He could not perform tandem gait or balance on toes due to right heel pain. He did not require use of an assistive device for ambulation. Functionally, Dr. Hernandez opined the claimant had no exertional limitations for lifting and carrying. He could stand and/or walk for a total of two hours in an eight-hour workday. He is unlimited in his ability to sit with normal breaks. He must avoid climbing ramps, stairs, ladders, ropes, or scaffolds. He should avoid hazardous machinery.

(AT 21; citing AT 449-52.)

This opinion is contradicted by the opinions of the state agency reviewing physicians, D. Pong, M.D. and H. Jone, M.D., who each opined that plaintiff could stand and/or walk for a total of six hours in an eight-hour workday and could occasionally climb ramps, stairs, ladders, ropes, or scaffolds. (AT 101-03, 128-30.)

The ALJ gave little weight to the opinions of the reviewing physicians because they were not supported by the medical evidence (AT 26), and great weight to the majority of Dr. Hernandez's opinion. (AT 25-26.) Yet, the ALJ gave little weight to a portion of Dr. Hernandez's opinion—that plaintiff could not stand and/or walk for more than two hours— because it was "too restrictive given the medical evidence of record, which shows conservative treatment and improvement, as well as evidence, which shows the claimant can perform basic activities of daily living." (AT 25.) Instead, the ALJ concluded that the record supports a finding that plaintiff can stand and/or walk cumulatively for a total four hours in an eight-hour workday. (AT 19.)

The ALJ's rejection of this portion of Dr. Hernandez's opinion is supported by substantial evidence in the record. (See AT 302-10, 468, 556-58, 624-26, 677, 696.) The ALJ accurately observed that "[r]ecords regarding the claimant's foot pain are sporadic and no records from treating podiatrists were submitted." (AT 20.) Also, the "records show conservative treatment in the form of nonsteroidal anti-inflammatory medication [Tramadol] and a boot for the right foot." (AT 25, 556-58.) While plaintiff requested and was prescribed a cane, it "was related to his difficulty walking in [the] newly prescribed boot." (AT 25, 468, 696.) Additionally, Dr. Hernandez only found tenderness to deep palpation on the heel examination and determined that plaintiff did not require the use of an assistive device for walking. (AT 25, 449-52.) In 2015 and 2016, plaintiff's treating physician noted that plaintiff walked with a normal gait and plaintiff reported he was generally doing well until he went walking with his wife. (AT 25, 624-26, 677.) "Most notably, treatment records do not show [plaintiff's] pain was such that increased treatment modalities were recommended. He was not diagnosed with or treated for chronic pain with narcotic pain medications." (AT 25.)

As to daily activities, the ALJ pointed out that plaintiff admitted that he could make simple meals; do light household chores and laundry; drive; go grocery shopping; run errands; and take his wife to appointments and his son to school. (AT 25, 302-10.)

Accordingly, the ALJ rejected the severity of the standing and walking limitations opined by Dr. Hernandez based upon several specific and legitimate reasons that are supported by substantial evidence in the record. See Edlund, 253 F.3d at 1157.

Indeed, even though plaintiff would interpret the evidence differently, the ALJ's reasonable and supported decision gives considerable weight to both plaintiff's subjective complaints and Dr. Hernandez's opinion, as evidenced by the RFC the ALJ adopted and the little weight the ALJ gave to the opinions of the state agency reviewing physicians. (See AT 19, 26.)

        ii.    **Ian Johnson, M.D.**

Plaintiff's primary care physician, Dr. Johnson prepared a medical source statement on August 16, 2016. (AT 579-82.) Dr. Johnson opined that plaintiff: can rarely lift less than ten pounds; can stand/walk for two hours out of an eight-hour work day, in increments of 10 minutes;

can sit for a total of four hours, in increments of one hour; requires unscheduled breaks every hour for less than thirty minutes, due to pain and lack of concentration; needs a cane for imbalance and pain; can only use his hands/fingers/arms for handling, fingering, and reaching 50% of the workday; will be off task 25% or more of the day; is incapable of even low stress work; is likely to have good days and bad days; and will be absent due to his impairments more than four days a month. (AT 579-82.)

The ALJ gave Dr. Jonson's opinion little weight, reasoning that the:

> limitations are inconsistent with the medical evidence of record, which shows the claimant can perform light household chores, and has a normal gait. The cane was prescribed to assist the claimant with ambulation when he was prescribed a boot for his right foot and had difficulty walking. Other records show he ambulates without a cane. Additionally, Dr. Johnson opined upper extremity limitations, which have no diagnosed conditions in the medical evidence of record. . . .
>
> [As to the non-exertional mental limitations] Dr. Johnson's opinion is inconsistent with his own medical records which show he found no significant findings on psychiatric exams. Additionally, he shows no treatment for the claimant's pain. He did not prescribe narcotic pain medications, which would support concentration deficits [rather he prescribed] only nonsteroidal anti-inflammatory medication.

(AT 26-28.)

The ALJ's rejection of Dr. Johnson's opinion is supported by substantial evidence in the record. As explained above regarding plaintiff's exertional limitations, plaintiff received conservative treatment, showed improvement, and had the ability to perform basic activities of daily living. (See AT 302-10, 468, 449-52, 556-58, 624-26, 677, 696.)

As to plaintiff's non-exertional mental limitations, the ALJ accurately summarized that:

> [n]otes from primary care providers in April 2014 showed improvement. In April 2014 . . . the claimant did not appear anxious or withdrawn, his speech and affect were appropriate, and he did not demonstrate psychosis. In July and August 2014 he was appropriately dressed, did not appear anxious or withdrawn, his speech and affect were again appropriate and he exhibited no psychosis. On February 13, 2015, he told his primary care treating source he was doing well psychiatrically.
>
> [In a] psychiatric visit note dated February 6, 2015 the claimant continued to report psychosis but mental status exam revealed satisfactory hygiene, appropriate dress, and normal eye contact and speech. Flow rhythm and productivity of speech was normal. He

8

> reported feeling anxious, depressed, and worried, and his affect was not appropriate. He was fully oriented. He was advised to exercise and take his medications. On October 9, 2015, treatment notes revealed he had occasional nightmares and anxiety, which were well controlled with Clonazepam and Abilify.

(AT 23; citing AT 481, 583-89, 595-612, 624.)

Thus, the ALJ provided several specific and legitimate reasons for discounting Dr. Johnson's opinion.

### iii. Kao Vang, M.S.W., A.S.W.

Plaintiff treated with therapist and social worker Kao Vang who provided three medical source statements in 2015 and 2016, which included serious non-exertional mental limitations. For example, Mr. Vang opined that due PTSD and psychosis plaintiff is unable to tolerate even low work stress; is likely to miss more than three days of work a month; and progressed from moderately to seriously impaired in several mental aspects of work. (See AT 561-77.)

The ALJ accurately observed that as a social worker, Mr. Vang is not an acceptable medical source. See 20 C.F.R. § 404.1513(d). Moreover, the ALJ concluded that Mr. Vang's "medical source statements indicat[ed] the claimant worsened at times when the records show he improved. His opinion[s] therefore [are] inconsistent with the medical evidence of record and [are] assigned little weight." (AT 27.) As discussed, the records support the conclusion that plaintiff's metal impairments improved with treatment, beginning in 2014. (See AT 481, 583-89, 595-612, 624.)

Furthermore, the ALJ gave great weight to the limitations opined by consultative psychological evaluator Deborah Lacy, Psy.D., which contradicted the limitations opined by Mr. Vang. (AT 27.) Specifically, Dr. Lacy opined that plaintiff can perform work activities without special additional supervision, and that he has a mild impairment in all other mental aspects of work. (AT 461.) The ALJ observed that

> Dr. Lacy's opinion is consistent with her exam findings as she noted [claimant] exhibited intact thought processes and content despite his reports of illusion of a spirit. He had intact ability to perform tasks of concentration and was only mildly limited in his ability to perform a thee-step command. He had good immediate and remote memory and his recent memory was only mildly impaired. . . . [H]er opinion

9

> is consistent with treatment records dated at this time, which as noted above indicate the claimant's hygiene and self-care improved and his depression improved.[6]

(AT 27.) This conclusion is supported by substantial evidence in the record. (See AT 454-61, 481, 583-89, 595-612, 624.)

Nonetheless, plaintiff asserts that the ALJ failed failed to properly consider all the factors set forth in 20 C.F.R. § 404.1527 — (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization—when discounting Kao Vang's opinions.[7] (ECF No. 18 at 13.) Rather than explaining how the ALJ erred as to each of these factors, however, plaintiff reasons that "[b]y disposing of . . . Vang's opinion[s] in a conclusory two sentence statement, the ALJ failed to consider the dynamic nature of mental health and chose to view plaintiff's mental health issues as a linear, static condition rather than the dynamic condition it is." (Id. at 14.) In support of this proposition, plaintiff relies on nonbinding cases from the Northern District of New York and the Fourth Circuit. (Id.) Plaintiff's argument is unpersuasive.

Importantly, the Ninth Circuit has held that an ALJ may discount the opinion of one who is not an acceptable medical source, such as Mr. Vang, if the ALJ gives reasons germane to the opinion for doing so. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Here, the ALJ found that Mr. Vang's opinions were inconsistent with the medical records that showed improvement, and the ALJ gave considerable weight to the contradictory opinion of Dr. Lacy. Each of these reasons is germane to Mr. Vang's opinions, because each reasonably undermines his findings, and each is supported by substantial evidence in the record. (See AT 454-61, 481,

---

[6] The court notes that the ALJ also gave little weight to the Global Assessment Functioning score Dr. Lacy assigned to plaintiff. (AT 27.) However, this is not at issue here, because the Global Assessment Functioning score does not pertain to any specific limitations opined by Dr. Lacy to which the ALJ gave great weight, and which contradict the limitations opined by Mr. Vang.

[7] Plaintiff raises this same argument in a conclusory and unavailing fashion, regarding how the ALJ weighed the opinions of Drs. Hernandez and Johnson. (See ECF No. 18 at 13.) Plaintiff fails to point out which factors were not considered as to these opinions and how the factors undermine the ALJ's conclusions. Additionally, as explained, the ALJ's conclusions are supported by several specific and legitimate reasons.

561-77, 583-89, 595-612, 624.) As such, the ALJ appropriate discounted the opinions of Mr. Vang.

2. *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

11

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of pain and limitations due to bilateral calcaneal spurs, depression, anxiety, and PTSD. Indeed, the ALJ limited plaintiff to standing and/or walking cumulatively for four hours; no climbing ramps, stairs, ladders, ropes, or scaffolds; no hazardous machinery; only frequent interaction with supervisors, coworkers, and the public; and low stress, noncompetitive work without production quotas or pacing. (AT 19.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

### i. Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).

Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, the ALJ reasonably concluded that "the medical evidence of record does not support that the claimant's bilateral calcaneal spurs and plantar fasciitis would preclude work" (AT 25), and that, as to plaintiff's mental impairments, the "records show treatment efforts were successful and he was stabilized." (AT 27.) As explained, these conclusions are supported by substantial evidence in the record. (See AT 302-10, 468, 481, 556-58, 583-89, 595-612, 624-26, 677, 696.)

### ii. Conservative treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

As the ALJ observed, plaintiff received conservative treatment for his physical limitations in the form of nonsteroidal anti-inflammatory medication, a walking boot for his right foot, and plaintiff did not require a cane to walk. (See AT 25, 449-52, 468, 556-58, 624, 696.)

### iii. Medical opinion evidence

Contradictory medical opinions are a sufficient basis for rejecting a claimant's subjective testimony regarding his limitations. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) (holding that a contradictory medical opinion that a claimant can lift up to 10 pounds frequently is a sufficient basis for rejecting the claimant's subjective testimony that he could only lift 10 pounds occasionally). The ALJ reasonably determined that the "[m]edical opinion evidence does not support the level of severity the claimant alleges." (AT 25.) This determination is supported by the opinions to which the ALJ gave great weight — the majority of Dr. Hernandez's opinion and Dr. Lacy's opinion. (See AT 449-52, 454-61.)

### iv. Daily activities

Substantial evidence supports the ALJ's finding that plaintiff's daily activities are inconsistent with his allegations of disabling symptoms and limitations. (AT 302-10.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, plaintiff admitted that he could make simple meals; do light household chores and

laundry; drive; go grocery shopping; run errands; and take his wife to appointments and his son to school. (AT 25, 302-10.)

To be sure, the record also contains some contrary evidence, such as plaintiff being unable to hunt, fish, or walk more than thirty minutes without a rest, suggesting that plaintiff's activities are more limited. (AT 306-07.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

        3.    *Whether the ALJ's RFC determination was without substantial evidentiary support*

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. See Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

Plaintiff argues that the ALJ impermissibly substituted his own lay opinion for that of the treating and reviewing physicians, when he opined that plaintiff can stand and/or walk cumulatively for four hours in an eight-hour workday, because this precise limitation does not mirror any of the limitations opined in the record. (ECF No. 18 at 10-12.) Yet, it is of no moment that the RFC does not precisely reflect any single medical opinion. The ALJ appropriately fulfilled his duty to determine plaintiff's RFC based upon his review of the record as a whole, including the treatment notes and medical opinions.

Moreover, for all the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. As such, plaintiff's argument that the RFC is without substantial evidentiary support is not well taken.

4. *Whether the ALJ erred at step five*

Plaintiff further argues that he should have been found disabled at step five. (ECF No. 18 at 18.) However, this argument rests on the assumption that the ALJ erred by not adopting the standing and walking limitations opined by Drs. Hernandez and Johnson. (See Id.) Because the ALJ appropriately discounted these opinions and reasonably adopted an RFC without these limitations, plaintiff's argument regarding step five necessarily fails.

V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: July 19, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

im.ss.yang.443.order MSJ